**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION FOR HABEAS RELIEF** |
| | ) | |
| vs. | ) | Case No. 4:14-cr-235 |
| | ) | |
| Keith A. Graves, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| Keith A. Graves, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:18-cv-092 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Before the Court is Defendant Keith A. Grave's Motion to Vacate under 28 U.S.C. § 2255 filed on May 7, 2018. See Doc. No. 151. The Government filed a response in opposition to the motion on July 3, 2018. See Doc. No. 153. For the reasons set forth below, the motion is denied.

I.    **BACKGROUND**

Graves was initially charged in a six count indictment with five counts of sex trafficking or attempted sex trafficking and one count of obstruction of justice, on December 3, 2014. See Doc. No. 1. The indictment was superseded three times. The eleven count third superseding indictment charged Graves with seven counts of sex trafficking by force or coercion in violation of 18 U.S.C. § 1591(a) and (b)(1); one count of a attempted sex trafficking by force or coercion in violation of 18 U.S.C. § 1591(a) and (b)(1), and 18 U.S.C. § 1594; one count of obstruction of the enforcement of

the sex trafficking statute in violation of 18 U.S.C. § 1591(d); one count of distribution of methamphetamine in violation of 18 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and one count of possession of methamphetamine in violation of 18 U.S.C. § 841. See Doc. No. 57. Each count of sex trafficking pertained to a different victim. The victims were Natasha (Count One), Sarah (Count Two), Katelynn (Count Three), Tasha (Count Four), Jacqueline (Count Five), Morning Starr (Count Nine), Ayesha (Count Ten), and April (Count Eleven). All the victims were adult women forced or coerced into prostitution by Graves. All the crimes took place in the Williston, North Dakota, area in 2013 and 2014.

Graves requested court-appointed counsel and the Federal Public Defenders Office (Jeremy Kemper) was appointed to represent him on December 23, 2014. See Doc. No. 8. Graves was ordered detained pending trial. On April 27, 2015, Graves filed a pro se motion requesting he be allowed to represent himself. See Doc. No. 32. On May 19, 2015, after a hearing at which the Court warned Graves about the pitfalls of self-representation, the motion was granted and standby counsel (Thomas Tuntland) was appointed. See Doc. No. 37.

Over the next few months, Graves was provided, pursuant to a stipulated discovery order, an extensive amount of discovery contained on twenty-two diskettes. Graves began to complain he was not being afforded adequate access to the discovery. On September 25, 2015, the Court ordered Graves moved to the Burleigh County Detention Center where he was to be given access to a laptop computer so that he could review all the discovery provided by the Government and adequately prepare for trial. See Docket No. 61.

After a last minute request by Graves to continue trial was denied, the trial commenced on October 19, 2015. Graves represented himself at trial although standby counsel was present and

offered assistance when requested by Graves.  On October 30, 2015, the jury returned a verdict finding Graves guilty on five counts of sex trafficking, one count of distribution of methamphetamine, and one count of possession of methamphetamine.  See Doc. No. 94.  Graves was found not guilty on two counts of sex trafficking, one count of attempted sex trafficking, and one count of obstruction.  On February 17, 2016, and with Graves continuing to represent himself, the Court sentenced him to 405 months imprisonment and a lifetime of supervision.  See Doc. No. 112.

With the assistance of counsel, Graves appealed.  The same attorney who acted as standby counsel at trial, Thomas Tuntland, handled the appeal.  In his appeal, Graves argued he was denied a fair trial because the Government did not provide discovery in a timely manner, and in a form that allowed Graves to review the discovery and prepare for trial, and the district court abused its discretion in denying his last minute motion for continuance.  The Eighth Circuit Court of Appeals rejected these claims and affirmed his conviction.  United States v. Graves, 856 F.3d 567 (8th Cir. 2017).

On May 7, 2018, Graves filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 151.  In his motion, Graves raises eleven claims of ineffective assistance of counsel.  Nine of the eleven claims of ineffective assistance of counsel pertain to appellate counsel.  Graves did not file a brief in support of his motion.  The claims are best described as vague allegations of error unsupported by any citations to the record or legal authority.  On July 3, 2018, the Government filed a response in opposition to Graves' motion.  See Doc. No. 153.

## II.  STANDARD OF REVIEW

"28 U.S.C. § 2255 provides a federal prisoner an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'" King v. United States, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C. § 2255(a)).  This requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962).  A 28 U.S.C. § 2255 motion is not a substitute for a direct appeal, and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994).  A 28 U.S.C. § 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).  Section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis, 417 U.S. at 343.

## III.  LEGAL DISCUSSION

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  To be eligible for habeas relief based on ineffective assistance of counsel, a defendant must satisfy the two-part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, a defendant must establish that defense counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88.  This requires showing that counsel made errors so serious that defense counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.  Id. at 687-88.  In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be

highly deferential." Id. at 689. If the underlying claim (i.e., the alleged deficient performance) would have been rejected, defense counsel's performance is not deficient. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining defense counsel's performance from counsel's perspective at the time of the alleged error. Id.

Second, it must be demonstrated that defense counsel's performance prejudiced the defense. Strickland, 466 U.S. at 687. In other words, under this second prong, it must be proven that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003). An increased prison term may constitute prejudice under the *Strickland* standard. Glover v. United States, 531 U.S. 198, 203 (2001).

There is a strong presumption that defense counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996). A court reviewing defense counsel's performance must make every effort to eliminate hindsight and second-guessing. Strickland, 466 U.S. at 689; Schumacher v. Hopkins, 83 F.3d 1034, 1036-37 (8th Cir. 1996). Under the *Strickland* standard, strategic decisions that are made after a thorough investigation of both the law and facts regarding plausible options are virtually unchallengeable. Strickland, 466 U.S. at 690. When reviewing the claims of ineffective assistance, a court may not consider the cumulative effect of the alleged errors. Shelton v. Mapes, 821 F.3d 941, 950 (8th Cir. 2016). Each claim of ineffective assistance "must stand or fall on its own." Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990).

In reviewing ineffective assistance of appellate counsel claims, a court's review is particularly deferential. Walker v. United States, 810 F.3d 568, 579 (8th Cir. 2016). Counsel is not required to raise every non-frivolous issue on appeal. Id. Effective appellate advocacy involves winnowing out weaker issues and focusing on one or a few key issues. Jones v. Barnes, 463 U.S. 745, 751-52 (1983); United States v. Brown, 528 F.3d 1020, 1033 (8th Cir. 2008). As such, failure to raise an issue on direct appeal is presumed to be an exercise of sound appellate strategy absent evidence otherwise. Id. "It is difficult to overcome *Strickland's* presumption of reasonableness unless the 'ignored issues are clearly stronger than those presented.'" Walker, 810 F.3d at 579 (quoting Gray v. Norman, 739 F.3d 1113, 1118 (8th Cir. 2014)). Even if a defendant demonstrates deficient performance by appellate counsel, he must still establish prejudice. Brown, 528 F.3d at 1033. That is, the defendant must demonstrate that the results of the appeal would have been different had the issue(s) been raised. Id.

### A.    CLAIM ONE

In his first claim for relief Graves contends his first attorney, Jeremy Kemper, failed to inform him of a plea offer extended by the Government. Graves contends he would have accepted this offer had he known about it.

Defense counsel has a duty to inform a defendant of any plea offer provided by the government. Missouri v. Frye, 566 U.S. 134, 145 (2012). The failure to do so constitutes deficient performance. Id. at 147. If counsel is deficient for failing to inform a defendant of a plea offer, a defendant must still demonstrate prejudice. Id. In this context, deficient performance requires that a defendant demonstrate a reasonable probability, that is a substantial likelihood, that: (1) he would

have accepted the plea offer; (2) neither the prosecution nor the trial court would have prevented the plea offer from being accepted, and (3) the end result would have been more favorable to the defendant. Id. at 148; Allen v. United States, 854 F.3d 428, 432 (8th Cir. 2017).

The Government is unwilling to concede Kemper failed to inform Graves of the plea offer. The Court cannot determine if Kemper failed to convey the offer to Graves and thus provided deficient performance unless there is an evidentiary hearing at which Kemper and possibly Graves testify. However, the Court need not inquire into whether defense counsel was deficient if it finds Graves has failed to demonstrate prejudice. Ramirez v. United States, 751 F.3d 604, 607 (8th Cir. 2014).

The only evidence of prejudice put forth by Graves is his self-serving statement that there was a reasonable probability he would have accepted the plea offer. However, a "self-serving statement, which does no more than open the door for conjecture, is not enough." United States v. Watson, 766 F.3d 1219, 1226 (10th Cir. 2014). Graves' entire argument in support of claim one consists of two sentences. Graves conclusory statement that he would have accepted the plea offer is refuted by the record.

Graves has alleged Kemper failed to communicate a plea offer to him. Kemper represented Graves from December 23, 2014, until May 19, 2015. See Doc. Nos. 8, 12, and 37. On January 15, 2015, the Government sent a proposed plea agreement to Kemper. See Doc. Nos. 153-1 and 153-2. The proposed plea agreement provided that Graves would plead guilty to Counts One, Four, and Six. See Doc. No. 153-2, ¶ 7. Each count carried a mandatory minimum sentence of 15 years. 18 U.S.C. § 1591(b)(1). The proposed plea agreement anticipated that Graves' total offense level would be 37, which was not binding on the court. See Doc. No. 153-2, ¶¶14 and 17. The Government agreed to

recommend a sentence within the applicable Guideline range or the mandatory minimum (15 years).

See Doc. No. 153-2, ¶ 19(a).  Graves could recommend any sentence he believed appropriate.  See

Doc. No. 153-2, ¶ 20.  The proposed plea agreement did not address the criminal history category but

left it to further investigation, and the understanding Graves would be sentenced based on his actual

criminal history which was believed to be substantial.  See Doc. No. 153-1, p. 2.

At the anticipated offense level of 37, criminal history category of I, Graves was facing  an

advisory Sentencing Guideline range of 210-262 months.  As it turned out, Graves criminal history

placed him in criminal history category III.  See Doc. No. 135, p. 43.  At an offense level of 37

contemplated in the proposed plea agreement, and a criminal history category III, Grave's advisory

Sentencing Guideline range would have been 262-327 months.  So Graves must show that he was

willing to accept a plea agreement which would have had him facing more than twenty (20) years of

imprisonment on the low end.  The record does not support Graves' bald contention.

At sentencing, Graves told the Court he had been offered a 20-year binding plea agreement

by the Government but "I told the lady I couldn't plead guilty to 20 years for something I didn't do."

See Doc. No. 135, p. 41.  "I wouldn't take 20 years."  See Doc. No. 135, p. 51.  While it is unclear

if the 20-year binding plea agreement Graves spoke of at sentencing is the Government's January 15,

2015, plea offer, it is clear Graves was not interested in a plea deal which would have resulted in a

sentence of 20 or more years of imprisonment.

In addition, Graves has consistently maintained his innocence throughout the case.  In his

motion to proceed pro se, Graves maintained he did not commit the crimes for which he was charged.

See Doc. No. 32.  At the hearing on his motion to proceed pro se Graves stated "I need to vindicate

myself, to show that these crimes that I'm being charged with that I'm not guilty of."  See Doc. No.

125, p. 5.  He maintained his innocence at sentencing as well stating "I didn't force nobody into no sex trafficking.  I didn't coerce nobody into anything."  <u>See</u> Doc. No. 135, p. 41.  "They wanted me to plead guilty to something I didn't do."  <u>See</u> Doc. No. 135, p. 51.  Graves continues to maintain his innocence in his Section 2255 motion, twice stating he was convicted of crimes he did not commit.  <u>See</u> Doc. No. 151, p. 9.  Maintaining his claim of innocence before and after trial contradicts Graves' claim that there was a reasonable probability he would have accepted the plea offer.  <u>Osley v. United States</u>, 751 F.3d 1214, 1224-25 (11th Cir. 2014) (noting a defendant's assertion of innocence both before and after trial undermines a claim he would have accepted a plea deal); <u>Sanders v. United States</u>, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who maintains his innocence at all stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty . . .").

Graves' continued assertions of innocence, both before and after trial, combined with his statements at sentencing that he would not accept a plea deal for 20 years contradicts his self-serving assertion there was a reasonable probability he would have accepted the Government's January 15, 2015, plea offer.  Graves offers no more than a conclusion, which is refuted by the record, to support his contention.  Allegations which are contradicted by the record or merely conclusions are fatal to a request for habeas relief.  <u>See</u> <u>Garcia v. United States</u>, 679 F.3d 1013, 1014 (8th Cir. 2012).  The Court finds that Graves has failed to demonstrate prejudice and as a result, claim one fails.

### B.    <u>CLAIM TWO</u>

For his second claim for relief, Graves contends appellate counsel should have raised the issue that the Government violated Federal Rules of Criminal Procedure 16(a)(1)(A), (E) and (F), and 26.2.

In denying Graves' appeal, the Eighth Circuit rejected the argument that the Government did not produce "discovery in a timely manner and usable form" and noted "there is no claim the government failed to comply with its disclosure requirements under Rules 16(a)(1)(A), (E), (F), or 26.2 of the Federal Rules of Criminal Procedure." <u>Graves</u>, 856 F.3d at 570. Graves appears to have taken that statement and included it as a ground his counsel should have raised on appeal. The contention lacks merit.

First, Graves presents a general conclusory claim without any specifics. He fails to identify any specific violation be believes occurred or any specific piece of evidence that was not disclosed. In addition, he fails to explain with any specificity how he was prejudiced by the alleged discovery violation. Such unsupported allegations are insufficient to warrant Section 2255 relief. <u>Sanders</u>, 341 F.3d at 723 (stating a Section 2255 motion may be dismissed without a hearing if the allegations cannot be accepted as true because they are merely conclusions rather than statements of fact); <u>Voytik v. United States</u>, 778 F.2d 1306, 1308 (8th Cir. 1985); <u>Smith v. United States</u>, 677 F.2d 39, 41 (8th Cir. 1982).

Second, Graves fails to demonstrate his appellate counsel was ineffective. On appeal, the Eighth Circuit Court of Appeals reviewed the district court's handling of an alleged Rule 16 violation and admission of that evidence for an abuse of discretion. <u>United States v. Shores</u>, 700 F.3d 366, 372 (8th Cir. 2012). An abuse of discretion occurs if the non-disclosure under Rule 16 resulted in prejudice to the substantial rights of the defendant in that, had the disclosure been made, there is a reasonable probability the results of the trial would have been different. <u>Id</u>. Graves does not address the issue of prejudice. The Court's own review of the record reveals no prejudice to Graves from a lack of discovery. As the Eighth Circuit noted, the Court went to great lengths to make sure Graves

had access to discovery and he "made considerable use of the government's discovery" at trial. Graves, 856 F.3d at 570. As standby counsel noted at the pretrial conference, the Government provided the defense with approximately 2,900 pages of Bates numbered discovery which was available to Graves for use at trial. See Doc. No. 128, p. 25. This totally unsupported claim fails.

### C.   CLAIM THREE

Graves contends appellate counsel was ineffective in relation to the discovery issues raised on appeal. Specifically, Graves contends appellate counsel should have provided the Eighth Circuit "with specific examples where the lack of access to specific discovery prejudiced his trial defense." See Doc. No. 151, p. 7. Graves does not explain what specific examples appellate counsel should have provided to the Eighth Circuit. In effect, Graves does exactly what he contends appellate counsel failed to do -  provide specific examples. Graves fails to provide any examples himself despite the fact he represented himself at trial. In so doing, he fails to show either deficient performance or prejudice. Graves' claim is nothing more than a conclusion without any supporting specifics and is insufficient to warrant habeas relief. See Sanders, 341 F.3d at 722.

On appeal, the Eighth Circuit noted that the record contradicted Graves' claim of lack of access and timely disclosure. Graves, 856 F.3d at 570. The Eighth Circuit stated:

> The lengthy trial transcript demonstrates that Graves made considerable use of the government's discovery in representing himself at trial, and that the district court liberally allowed him to introduce discovery materials and use them to impeach government witnesses.

Id. Graves makes no showing this conclusion was incorrect as he has failed to identify any specifics supporting his claim.

In addition, the record contradicts Grave's claim that he had inadequate access to discovery. At the June 23, 2015, status conference, Graves indicated he had received the first discovery on June 4, 2015, and had reviewed eight of the approximately twenty-four discovery disks that had been provided. See Doc. No. 126, p. 8. At the September 28, 2015, pretrial conference hearing, Graves indicated he had reviewed a lot of the discovery. See Doc. No. 128, p. 18. The trial transcript demonstrates Graves had adequate access to discovery such that he was able to use statements/interviews and other discovery material to cross-examine government witnesses. See Doc. Nos. 130, 131, and 134, pp. 155-58, 396-98, 445-48, 452, 508-13, 516-17, 522, 528-29, 882-85, 938, 948-52.[1] Graves also introduced photos from discovery. See Doc. No. 134, pp. 873-75.

Graves has failed to demonstrate appellate counsel was ineffective in arguing the discovery issues at the Eighth Circuit. Graves himself provides no examples to support his claim and the record demonstrates, as the Eighth Circuit noted, that he had adequate access to the discovery. As such, appellate counsel has not been shown to have provided deficient performance. Nor has prejudice been demonstrated. As a result, this claim fails.

D.    **CLAIM FOUR**

In his fourth claim for relief, Graves contends appellate counsel should have challenged the sufficiency of the evidence on his conviction for distribution of methamphetamine (Count Seven). Graves argues there was no evidence to support this charge. The record demonstrates otherwise. There was credible testimony at trial by numerous witnesses that Graves distributed

_____

[1]Trial transcript page numbers refer to the continually paginated trial transcript rather than the ECF page numbers.

methamphetamine. <u>See</u> Doc. Nos. 130, 131, and 132, pp. 123, 347-48, 352, 355, 379, 421, 428, 472, 600, 623, 655, 662. The evidence adduced at trial demonstrated that Graves was a pimp and a drug dealer who, by threats of violence, forced women into prostitution and forced them to sell drugs for him. Graves also provided the women he forced into prostitution with methamphetamine on a regular basis, both as a form of payment and control. Although some of the witnesses may have been accomplices in the distribution, their testimony is sufficient for a jury to find Graves guilty of distributing methamphetamine. <u>United States v. Benedict</u>, 855 F.3d 880, 886 (8th Cir. 2017) (noting the testimony of co-conspirators is sufficient to support a conviction unless it is facially incredible or insubstantial). Appellate counsel cannot be faulted for not raising a meritless claim.

### E.    <u>CLAIM FIVE</u>

In his fifth claim for relief Graves contends defense counsel revealed critical information about the case to the prosecution. Specifically, Graves argues the Government's theory of the case involved Graves committing offenses on the reservation, and defense counsel told the prosecution that the defense had evidence that Graves was not on the reservation on the dates alleged which caused the Government to change its theory of the case soon thereafter. In other words, Graves contends defense counsel gave away his alibi defense. This allegedly occurred before Graves decided to proceed pro se. Graves does not specify what Indian reservation he is talking about. Graves is not a tribal member.

Graves provides few specifics regarding this claim. He does not identify what evidence he had as an alibi or even the Government's theory which it allegedly changed. Vague and conclusory claims of ineffective assistance provide insufficient basis for the grant of habeas relief. <u>Sanders</u>, 341

F.3d at 722 (stating a Section 2255 motion may be dismissed without a hearing if the allegations cannot be accepted as true because they are merely conclusions rather than statements of fact). The original indictment in this matter was filed on December 3, 2014. See Doc. No. 1. All of the offenses charged therein were alleged to have occurred in North Dakota. None of the charged offenses were alleged to have occurred in Indian Country. The testimony at trial demonstrated almost all the offenses occurred in or around Williston, North Dakota. Some events took place in Minot, North Dakota. Williston and Minot are not located on an Indian reservation. The drug and human trafficking offenses for which Graves was convicted did not occur on a reservation. In other words, any alibi to Graves' presence on the reservation would have had no influence on the case because the evidence, which was substantial, showed the criminal activity occurred almost exclusively in Williston and Minot. See Hanes v. Dormire, 240 F.3d 694, 699 (8th Cir. 2001) (noting none of the allegations of ineffective assistance had any effect on the central evidence against the defendant and thus there could be no finding of prejudice).

In addition, Graves fails to demonstrate deficient performance. If defense counsel disclosed alibi information, that does not constitute deficient performance. Assuming Graves had an alibi indicating he was not on and Indian reservation at the time of an alleged offense, he would have to provide that alibi information upon request from the Government. Fed. R. Crim. P. 12.1(a). Providing the Government information required to be disclosed by the Federal Rules of Criminal Procedure is not  deficient performance. As a result, claim five fails.

## F.  **CLAIM SIX**

For his sixth claim for relief, Graves contends appellate counsel was ineffective in failing to challenge the district court's calculation of his criminal history category. Specifically, Graves contends the reference in the Presentence Investigation Report ("PSR") to a Nevada arrest is inaccurate as he was never arrested in Nevada.

The only Nevada arrest referenced in the PSR is found in paragraph 102. See Doc. No. 108. The PSR states Graves was arrested for possession of stolen property but prosecution was denied. Graves did not object to paragraph 102 at the time of sentencing. Graves cannot fault anyone but himself for failing to object at the time of sentencing. As Graves was not convicted in relation to this arrest and he was assessed no criminal history points for it, it had no bearing on his criminal history category. There must be an adjudication of guilt before a conviction may be included in a defendant's criminal history score. U.S.S.G. § 4A1.2(a)(1). Thus, Graves has failed to demonstrate any prejudice.

The failure to object to a factual finding in the PSR means the court may accept the uncontested fact as true for sentencing purposes. United States v. Pepper, 747 F.3d 520, 523 (8th Cir. 2014). Further, the court of appeals may rely upon, and accept as true, unobjected to facts in the PSR. United States v. Betts, 509 F.3d 441, 444 n. 2 (8th Cir. 2007). Because no criminal history points were assessed for the Nevada arrest and no objection was lodged at the time of sentencing, any appellate challenge would have been meritless. Defense counsel cannot be deemed ineffective for failing to raise meritless claim. Thomas v. United States, 951 F.2d 902, 905 (8th Cir. 1991).

## G.    CLAIM SEVEN

Graves contends it was excessive and unreasonable for the Court to impose a life term of supervised release and appellate counsel was ineffective in failing to challenge it.  Graves was acting pro se at the time of sentencing although standby counsel did provide some assistance.  The Government maintains the life term of supervision was permissible under the applicable statutes and any appellate challenge would have failed.

Because Graves was convicted of sex trafficking in violation of 18 U.S.C. § 1591, he was subject to a supervised release term of five years to life.  See 18 U.S.C. § 3583(k).  The Court imposed a life term of supervised release.  A term of supervised release is usually reviewed for an abuse of discretion.  United States v. Ristine, 335 F.3d 692, 694 (8th Cir. 2003).  However, Graves did not object to the imposition of the life term of supervision at the time of sentencing.  Thus, appellate review would be for plain error.  United States v. Goettsch, 812 F.3d 1169, 1171 (8th Cir. 2016); Ristine, 335 F.3d at 694.  "Plain error occurs if the district court deviates from a legal rule, the error is clear under current law, and the error affects the defendant's substantial rights."  Ristine, 335 F.3d at 694.  If such an error exists, a court should correct the error "only when 'the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding.'"  United States v. Stanley, 891 F.3d 735, 739 (8th Cir. 2018) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

The Court sees no reasonable probability the Eighth Circuit would have ruled in Graves' favor on this issue as district courts enjoy wide discretion on such matters.  See Goettsch, 812 F.3d at 1171.  A lifetime term of supervised release falls within the statutory maximum.  Any challenge appellate counsel would have brought surely would have failed.  See United States v. Koeble, 366 Fed. App'x

693 (8th Cir. 2010) (unpublished) (holding a 25-year term of supervised release imposed upon a defendant was not plain error because it fell within the statutory maximum of life). The record clearly reveals that Graves' conduct was egregious. Even under an abuse of discretion standard, the Court is confident any challenge would have failed. Graves has not demonstrated defense counsel's failure to raise this issue on appeal was deficient performance or that any such alleged failure resulted in any prejudice.

### H.  CLAIM EIGHT

For his eighth claim for relief Graves contends appellate counsel was ineffective for failing to challenge his conviction for possession of methamphetamine (count eight). Count eight charged Graves with possession of methamphetamine on or about July 29, 2014. Graves contends there was no evidence to support the conviction. The record reveals there was more than sufficient evidence to support the conviction and no basis for an appeal based on a lack of evidence.

On July 29, 2014, a search warrant was executed on room 148 of the Grand Williston Hotel in Williston, North Dakota, after one of Graves' victims contacted police. See Doc. No. 130, pp. 224-25. When law enforcement agents entered, they found Graves and Tasha in the room. See Doc. No. 130, p. 225. Agents also found a hairspray can with residue consistent with methamphetamine. See Doc. No. 130, p. 226. There was also testimony that the bottom of hairspray cans were used to prepare methamphetamine for injection. See Doc. No. 130, pp. 96-97. Lab testing revealed the residue on the hairspray can was methamphetamine. See Doc. No. 133, pp. 737-39.

A search warrant was also executed on a green Buick Lesabre located at the Mainstay Hotel in Williston, North Dakota, on July 29, 2014. See Doc. No. 130, p. 268-69. Found in the trunk of

the Buick was a pill bottle that contained, among other things, a crystalline substance the agent believed was methamphetamine.  See Doc. No. 130, p. 270.  The Buick was registered to Tasha.  See Doc. No. 130, p. 271.  Tasha is the sex trafficking victim referenced in count four of the indictment. Tasha testified that Graves stored drugs in a vehicle parked at the Mainstay Hotel and had her register the car in her name.  See Doc. No. 131, pp. 487-88.  In addition, numerous people testified that Graves possessed drugs, primarily methamphetamine.  See Doc. Nos. 130, 131, and 132, pp. 96, 99, 481, 506, 655.  From this evidence, a jury could reasonably infer Graves possessed methamphetamine as charged in count eight.  Graves' contention there was no evidence to support a conviction for possession of methamphetamine clearly fails.

I.    **CLAIM NINE**

For his ninth claim for relief, Graves contends appellate counsel was ineffective in failing to challenge the sufficiency of the evidence pertaining to the sex trafficking convictions.  Graves was convicted on five counts of sex trafficking by force or coercion: Count One (Natasha), Count Two (Sarah), Count Four (Tasha), Count Nine (Morning Starr), and Count Ten (Ayesha).  All five women testified.  See Doc. Nos. 130, 131, and 132, pp. 82-218, 346-393, 462-508, 581-643.  Their testimony, which was at least partially corroborated by one another, was more than sufficient to sustain Graves' convictions.  Graves' unsupported contention otherwise is frivolous.

Had the sufficiency of the evidence been challenged on appeal, the Eighth Circuit would have viewed the evidence in a light most favorable to the verdict, and would have given the Government the benefit of all reasonable inferences that could be drawn from the evidence.  United States v. Bart, 888 F.3d 374, 378 (8th Cir. 2018).  The court of appeals does not assess the credibility of the

witnesses. The uncorroborated evidence of a single witness or victim may be sufficient to convict. United States v. L.B.G., 131 F.3d 1276, 1277 (8th Cir. 1997). Under this standard, Graves' convictions would certainly have been affirmed. The testimony of each victim was sufficient, in and of itself, to convict. Further, some of the testimony of the victims was corroborated by that of other victims. As such, appellate counsel's failure to raise these issues was not deficient performance and, in any event, clearly did not result in prejudice and thus claim nine fails.

### J.    CLAIM TEN

For his tenth claim for relief, Graves contends appellate counsel should have challenged both his drug convictions (counts seven and ten) because no drugs were found. The Government maintains there was more than enough evidence to convict Graves on both counts.

The Eighth Circuit reviews de novo challenges to the sufficiency of the evidence, viewing it most favorably to the verdict and accepting all reasonable inferences supporting it. United States v. Thomas, 877 F.3d 1077, 1078 (8th Cir. 2017). "It is well established that the uncorroborated testimony of a single witness may be sufficient to sustain a conviction." L.B.G., 131 F.3d at 1277. And "a jury verdict may be based solely on the testimony of cooperating witnesses." United States v. Tillman, 765 F.3d 831, 834 (8th Cir. 2014) (internal quotations omitted). Multiple witnesses testified they saw Graves possess methamphetamine, use methamphetamine, provide or sell methamphetamine to others, and that they assisted Graves with the distribution of methamphetamine, or were supposed to sell methamphetamine for him. See Doc. Nos. 130, 131, and 132, pp. 123, 347-48, 352, 355, 379, 421, 428, 472, 623, 634, 655, and 662. This testimony was sufficient to find Graves guilty.

In addition, there was physical evidence of drug activity found in the hotel room in which Graves was found on July 29, 2014. See Doc. No. 130, p. 226. Law enforcement agents found a hairspray can with methamphetamine residue consistent with methamphetamine. See Doc. Nos. 130 and 133, pp. 226, 737-39. Sarah and Tasha both testified that Graves forced Tasha to inject Sarah with methamphetamine that was prepared using the bottom of a hairspray can, and both women identified the can recovered from the hotel room (Government Exhibit Number 1) as the can used to prepare the methamphetamine. See Doc. Nos. 130 and 131, pp. 96-98, 481-83. The can of hairspray tested positive for methamphetamine. See Doc. No. 133, pp. 738-39. Also, law enforcement officers found syringes and what they believed to be methamphetamine in a Buick linked to Graves at the Mainstay Hotel. See Doc. No. 130, pp. 269-70. Tasha testified Graves stored methamphetamine in a car at the Mainstay Hotel. See Doc. No. 131, pp. 487-88. Graves' convictions for possessing and distributing methamphetamine were well-supported by eyewitness testimony, physical, and circumstantial evidence. Appellate counsel cannot be faulted for not raising a meritless issue and claim ten fails.


K.      **CLAIM ELEVEN**

For his last claim Graves contends appellate counsel was ineffective in failing to argue on appeal that the district court erred by not allowing him to play video evidence in order to impeach witnesses. Graves contends he was not allowed to fully impeach government witnesses and this caused him to be convicted of crimes he did not commit. Graves does not identify what video evidence the Court did not allow him to use or what witnesses he would have used video evidence to impeach. As such, the contention is nothing more than a vague conclusory allegation which is

insufficient for a finding that appellate counsel was ineffective.  Sanders, 341 F.3d at 722; United States v. Robinson, 64 F.3d 403, 405 (8th Cir. 1995).

In addition, the record demonstrates Graves was not prevented from using recordings of witness interviews or activities for cross-examination purposes.  The Court made clear to Graves that he would be allowed to play the relevant portions of videotaped interviews but he would not be allowed to play the entire interview because much of it would be irrelevant and it would take far too much time.  See Doc. No. 131, pp. 522-23.  For instance, Graves questioned Natasha about prior statements she made to BCI Agent Craig Zachmeier while in the Rugby jail.  See Doc. No. 131, p. 381.  In discussing Graves' desire to call Agent Zachmeier, Graves stated he wished to play the recording of the interview.  See Doc. No. 131, p. 397.  The Court informed Graves that rather than subpoena Zachmeier, to mark the recording as an exhibit, find the portions he wished to play, and the Court would allow the relevant portions to be played for the jury.  See Doc. No. 131, p. 397.  However, when Graves informed the court the interview was about 40 minutes in length, the Court believed it was not necessary to listen to the entire interview because the recording probably contained much irrelevant material.  See Doc. No. 131, p. 398.  Clearly, the Court did not deny Graves the opportunity to play the relevant portions of recorded interviews.  It was also clear that as a pro se litigant, Graves was frequently unprepared or ill-prepared to conduct effective cross-examination using witness interviews, but that was his choice and not the fault of the Court.

Appellate courts review district court evidentiary rulings for abuse of discretion.  United States v. Lopez, 880 F.3d 974, 980 (8th Cir. 2018).  A district court has broad discretion on evidentiary rulings.  United States v. McCorkle, 688 F.3d 518, 521 (8th Cir. 2012).  An evidentiary ruling will be affirmed unless there is a clear and prejudicial abuse of discretion.  Id.  Absent evidence to the

contrary, the failure to raise an issue is presumed to be sound appellate strategy. <u>United States v. Brown</u>, 528 F.3d 1030, 1033 (8th Cir. 2008). The record demonstrates Graves was not denied the opportunity to use the recordings of interviews for impeachment. All the Court required was that he play only the relevant portion of the videos and not the entire video. Graves used some of the recordings to cross-examine witnesses. Graves has failed to demonstrate deficient performance in appellate counsel's decision to bypass this issue.

Graves also fails to demonstrate prejudice as he has made no showing that the result of his appeal would have been different had the issue been raised. To establish a reasonable probability he must demonstrate a substantial likelihood the result would have been different. <u>Cullen v. Pinholster</u>, 563 U.S. 170, 189 (2011). Appellate counsel would have to overcome the deferential review of the Court's evidentiary rulings. The record demonstrates Graves was not denied the opportunity to use the recordings, but limited to presenting the relevant portions thereof. As such, it would have been unlikely he would have succeeded on appeal. Graves' eleventh claim for relief fails.

IV.     <u>CONCLUSION</u>

The Court has carefully reviewed the entire record, the parties' filings, and the relevant case law. For the reasons set forth above, Graves' motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 151) is **DENIED**. The Court also issues the following

**ORDER**:

    1)      The Court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such a appeal would be frivolous and cannot be taken in good faith. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

2)      Based upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings.  Therefore, a certificate of appealability will not be issued by this Court.  Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983).  If the defendant desires further review of his motion, he may request the issuance of a certificate of appealability by a circuit judge with the Eighth Circuit Court of Appeals.

**IT IS SO ORDERED.**

Dated this 11th day of February, 2019.

/s/ *Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court